IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DANIEL ANTLEY, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | |
| | § | Civil Action No. _____ |
| COMCAST OF HOUSTON, LLC, | § § | |
| Defendant | § § | |
| | § | JURY TRIAL DEMANDED |

_____

**COMPLAINT**
_____

COMES NOW Plaintiff Daniel Antley ("Plaintiff" or "Mr. Antley") and complains that Defendant Comcast of Houston, LLC violated Mr. Antley's rights under the Fair Labor Standards Act ("FLSA") and under the Employee Retirement Income Security Act ("ERISA").  In support thereof, Mr. Antley would respectfully show the Court the following:

PARTIES

1. Plaintiff Daniel Antley ("Mr. Antley") is an individual who resides in Texas City, Galveston County, Texas.

2. Defendant Comcast of Houston, LLC ("Comcast") is limited liability company organized under the laws of Delaware with its principal place of business in Houston,

Texas and can be served through its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 by certified mail.

## NATURE OF THE ACTION

5.     Defendant knowingly violated the FLSA, 29 U.S.C. § 201, et seq., by : (1) failing to pay Plaintiff for all hours worked; (2) failing to pay Plaintiff, a non-exempt employee, at one and one-half times his regular rates of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek; (3) failing to keep proper records; (4) requiring Plaintiff to falsify his time records in an attempt to conceal Defendant's FLSA violations; and (5) retaliating against Plaintiff by terminating his employment in part for not falsifying his time records in the manner Defendant requested.  Pursuant to 29 U.S.C. § 216, Mr. Antley is entitled to reinstatement, unpaid wages, unpaid overtime, liquidated damages, costs and attorney's fees.

6.     Defendant knowingly violated Plaintiff's rights under ERISA, 29 U.S.C. § 1001 *et seq.*, by: (1) threatening Plaintiff with termination if he remained on long-term disability the full amount of time requested for back surgery recuperation; (2) discriminating against Plaintiff for taking long-term disability; and (3) retaliating against Plaintiff for taking long-term disability.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. § 216, and 29 U.S.C. § 1132.

8.     Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff was employed by Defendant in Defendant's League City, Galveston County, Texas office and a substantial

portion of the events giving rise to the claims stated herein arose in Galveston County, Texas.

## FACTS

9. Defendant Comcast provides cable television, internet, and phone services to the greater Houston and Galveston, Texas areas.

10. Plaintiff Mr. Daniel Antley worked for Defendant and Defendant's predecessor, Time Warner, for approximately (10) years. Mr. Antley started as a service tech and was ultimately promoted to a Network Tech 4, a position he held for approximately 7 years until his termination. As a Network Tech 4, Mr. Antley worked in the field doing a variety of maintenance work.

11. Throughout Mr. Antley's career with Comcast, he was a nonexempt hourly employee who typically worked 60 hours a week and sometimes worked 80 or more hours a week. In addition to his hourly wage, Mr. Antley qualified for various benefits including health insurance, short-term disability, and long-term disability.

12. Mr. Antley was very committed to his job and served as his supervisors go-to person. His supervisors always called him first to handle various issues. In fact, even on his days off and when he was not on call, Mr. Antley was often the first one called to perform work.

13. For most of Mr. Antley's career, Comcast recognized his hard work and dedication. Mr. Antley received a 4% raise every year, the highest standard raise, and in June 2009, Mr. Antley was informed that he was the top tech in his division and was given a $2/hour raise. Throughout Mr. Antley's career with Comcast and its predecessor Time Warner, Mr. Antley always or at least almost always worked though

his lunch. Mr. Antley's supervisors were well aware of this fact and would, on several occasions, even assign Mr. Antley to work through lunch. Despite the fact that Mr. Antley rarely, if ever, took a lunch break, Mr. Antley's supervisors required him to make his timecard reflect a one-hour lunch break each work day even on the days when his supervisors assigned him to work through lunch. When Mr. Antley raised the fact that he always worked those hours, Mr. Antley's supervisors instructed him that he had to put down the one-hour lunch break each work day. Mr. Antley was never instructed not to work during his lunch hour and was never reprimanded for working through lunch. Comcast never paid Mr. Antley for any of the lunch hours he worked.

14. In August 2007, Mr. Antley had to have back surgery. He was required to be out of work for at least six months for the recovery and would need several more months of physical therapy thereafter. While out for the back surgery, Mr. Antley applied for and received short-term disability. After only four months of being out on disability leave, Mr. Antley's supervisors instructed him to come back to work. The supervisors informed Mr. Antley that if he did not return to work immediately, he would lose his job. Not wanting to lose his job, Mr. Antley convinced his doctor to release him to work. Mr. Antley's doctor released him to light duty.

15. During the time Mr. Antley was restricted to light duty, Comcast allowed Mr. Antley to work in the office. After a few weeks of light duty, Mr. Antley was able to obtain a full duty release and went back to work in the field.

16. After this first back surgery, Mr. Antley continued to be the go-to person for his supervisors and usually worked 60-80 hours a week. But because Mr. Antley was forced by his Comcast supervisors to return to work early, his back never fully

recuperated from the surgery. Therefore, in 2009, Mr. Antley required a second back surgery.

18.     Approximately March or April 2009, Mr. Antley notified his supervisor that he would require the second back surgery.  Mr. Antley submitted all the required paperwork and applied for disability leave under Comcast's short-term and long-term benefits plan. Mr. Antley's doctor stated that Mr. Antley would again need to be out of work for a minimum of six months of recovery and would need several additional months of physical therapy.

19.     Mr. Antley had his second back surgery on June 1, 2009.  While out on disability leave, Mr. Antley's supervisor frequently called him to ask when he would be coming back to work.  This pressure to return to work early increased in frequency and intensity as the weeks passed.  In October 2009, Mr. Antley's supervisor began threatening to fire Mr. Antley if he did not return to work immediately.

20.     In or about late October 2009, Mr, Antley's supervisor informed Mr. Antley that he was going to post Mr. Antley's job if Mr. Antley did not report to work the following week. Mr. Antley then begged and pleaded with his doctor to release him to work and notified his doctor that he would lose his job if not released.  Mr. Antley's doctor did not want to release him to work, but ultimately released him to light duty.  Mr. Antley provided the light duty release to his supervisor who informed him that light duty was not good enough; he required a full-duty release or Mr. Antley would be fired.  After further begging and pleading by Mr. Antley wanting to save his job, Mr. Antley's doctor released him to full duty in early November 2009.

21.     After returning to work, Mr. Antley's supervisor's attitude towards Mr. Antley changed.  He began harassing Mr. Antley by nitpicking and criticizing Mr. Antley for minor things for which no other worker was criticized. Mr. Antley's supervisor also stopped calling on Mr. Antley for work and drastically reduced Mr. Antley's hours.

22.     In or about September 2010 through November 2010, Mr. Antley applied and interviewed for several promotions with Comcast and was denied each promotion. None of the individuals who were ultimately selected for these promotions were as well-qualified as Mr. Antley.

23.     Finally, after a year of harassment and retaliation for taking disability leave, Mr. Antley was terminated in December 2010.  Comcast refused to provide any concrete information to Mr. Antley or the Texas Workforce Commission regarding the reason for Mr. Antley's termination.

24.     Mr. Antley is currently receiving unemployment.

25.     After his wrongful termination, Mr. Antley was also forced to cash out his 401k to pay his mortgage and other living expenses for which he incurred several thousands of dollars in penalties.   He has also had to pay out of pocket for benefits and expenses that he would not have had to pay for had his employment with Comcast continued. Such expenses include but are not limited to medical insurance for himself, his wife, and his children; and medical costs for which he would not have had to pay if he had remained under Comcast's benefits.

## CAUSES OF ACTION

**I.    FLSA Violations - Failure to Pay for All Hours Worked and Failure to Pay Overtime**

25.     Plaintiff incorporates the allegations set forth in paragraphs 1-25.

26.     Throughout Mr. Antley's employment with Comcast, he was a nonexempt hourly employee.

27.     Mr. Antley worked over forty hours each week, with few or no exceptions.

28.     Mr. Antley worked rarely if ever took a lunch break, opting instead to work through lunch.  Mr. Antley's supervisors often assigned him to work through lunch.

29.     Comcast required Mr. Antley to document a lunch hour for each day of work despite knowing that Mr. Antley always, with few or no exceptions, was working during that hour and did not take a lunch break.  Despite this, Comcast did not pay Mr. Antley for working during the lunch hour.

30.     Comcast never instructed Mr. Antley not to work during his lunch hour nor did Comcast reprimand Mr. Antley for working during his lunch hour.

31.     Because Mr. Antley worked over time each week, with few or no exceptions, and because Comcast failed to pay Mr. Antley for the lunch hour he worked each day, Comcast failed to pay Mr. Antley for five (5) hours of overtime each week.

32.     Comcast, therefore, is liable to Mr. Antley for unpaid wages and/or overtime compensation going back three years, an additional equal amount as liquidated damages, costs and attorney's fees.

**II.    ERISA Violations**

33.     Plaintiff incorporates the allegations set forth in paragraphs 1-32.

34.     Mr. Antley participated in Comcast's employee benefits plan which included short-term disability and long-term disability benefits.

35.      In 2007, Mr. Antley had his first back surgery and was supposed to be on disability leave receiving disability benefits for at least six months.  But after about five

months after having his first back surgery, Comcast required Mr. Antley to return to work.

36. In 2009, Mr. Antley had his second back surgery and was supposed to be on disability leave receiving disability benefits for at least six months. Almost immediately after Mr. Antley had this back surgery, his supervisor began pressuring him to return to work. And then after about five months after having his back surgery, Comcast required Mr. Antley to return to work with a full duty release. Comcast informed Mr. Antley if he did not return to work immediately, he would be fired.

37. After Mr. Antley returned to work early from his disability leave, his Comcast supervisor began harassing and retaliating against him. And when Mr. Antley applied for promotions for which he was the most qualified applicant, he was denied each promotion. Then, in December 2010, Mr. Antley was terminated.

38. Comcast has therefore interfered with Mr. Antley's protected rights, has discriminated against him, and has retaliated against him for using and seeking to use his disability benefits.

### III. Wrongful Termination

39. Plaintiff incorporates the allegations set forth in paragraphs 1-38.

40. Defendant wrongfully terminated Plaintiff's employment.

41. As a result, Plaintiff incurred damages and mitigation damages that he would not have incurred had he remained employed by Defendant.

42. Such damages include but are not limited to: penalties for cashing in his 401k early; and payment for medical benefits and expenses.

## JURY DEMAND

43. Mr. Antley hereby demands a trial by jury.

## PRAYER FOR RELIEF

Mr. Antley prays that Defendant be held liable for: (a) failure to pay Mr. Antley all of his regular and/or overtime wages, (b) interfering with his right to use disability benefits, (c) retaliating against him for using disability benefits, and (d) wrongfully terminating him for using disability benefits, and that Plaintiff be awarded the following:

1. Unpaid regular and overtime wage for the past three years because Defendant's actions were willful and knowing;

2. Liquidated damages in the same amount as the unpaid wages and overtime;

3. Reinstatement as a Comcast employee but in a supervisory position for which he applied and qualified;

4. Payment of regular wages and overtime for Mr. Antley's regular hours from the time of his termination through his time of reinstatement or through the time of judgment, whichever is shorter;

5. Reinstatement of all benefits earned through the time of termination;

6. Reinstatement of all employment benefits that Mr. Antley would have received had he never been terminated;

7. Actual damages;

8. Mitigation damages;

9. Interest;

10. Costs;

11. Attorney's fees;

12. Such other relief, legal and/or equitable, that the Court believes is just and proper.

Respectfully submitted,

THE SLAUGHTER LAW FIRM, PLLC

__/s/ Michelle M. Slaughter_____
Michelle M. Slaughter
State Bar No. 24046863
Southern District No. 569836
1002 Gemini Street., Suite 100
Houston, Texas 77058
(281) 667-4128 Phone
(281)676-3773 Fax
mslaughter@slaughterlawfirm.com

Attorney for Plaintiff Daniel Antley